## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **MEDICILON INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **MAO CHEN,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

FILED: JUNE 29, 2009
09CV3922
JUDGE ANDERSEN
MAGISTRATE JUDGE COLE

Case No.
   CH

**JURY TRIAL DEMANDED**

### COMPLAINT

Plaintiff Medicilon Inc. ("Plaintiff Medicilon" or "Plaintiff"), by its attorneys and as its

complaint against defendant Mao Chen ("Defendant"), alleges as follows:

### THE PARTIES

1.     This action arises from Defendant's illegal and unauthorized cybersquatting and

use of Plaintiff Medicilon's property, including without limitation Plaintiff's trade name

MEDICILON, domain name "medicilon.com," assets, books and records, communication media,

and customer list.

2.     Plaintiff Medicilon is incorporated in Illinois, with its principal place of business

located at 67 Libing Road, Building 5, Zhangjiang Hi-Tech Park, Shanghai, 201203, China, and

a primary biomedical research laboratory facility (the "Chicago facility") located at 2201 W.

Campbell Park Drive, Suite 44, Chicago, Illinois 60612-4160.

3.     Defendant Mao Chen is a naturalized citizen of the United States who resides at

6608 Greene Road, Woodridge, Illinois 60517.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this suit under 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367, as it arises under an Act of Congress.

5.      Defendant is subject to personal jurisdiction in Illinois because he is an Illinois resident.

6.      Venue properly exists in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### The History and Business of Medicilon Inc.

7.      In 2003, Plaintiff Medicilon was founded by Dr. Chun-Lin Chen ("Dr. Chen"), Dr. Jintao Zhang ("Dr. Zhang"), and Defendant.  All three founders are naturalized citizens of the United States and, at the time of incorporation, were Plaintiff's sole directors and shareholders.

8.      Dr. Chen currently serves as both the CEO and a director of Plaintiff Medicilon. Before incorporating Plaintiff Medicilon, Dr. Chen received his Ph.D. from Oklahoma State University and completed his postdoctoral training in the United States.  Dr. Zhang currently serves as a director of Plaintiff Medicilon.  Before forming Plaintiff Medicilon, Dr. Zhang received his Ph.D. from the Shanghai Institute of Organic Chemistry and completed postdoctoral fellowships at the University of Chicago.

9.      At the time of Plaintiff's incorporation, Defendant became a director, shareholder, and Vice President of Plaintiff Medicilon.  On information and belief, Defendant was involved primarily with product sales and distribution.  Defendant is currently still a shareholder of Plaintiff Medicilon.

10.      Since its incorporation in 2003, Plaintiff Medicilon has been in the business of marketing, selling, and distributing biologic reagents in the United States.  This business includes

- 2 -

appearing at trade shows, visiting clients in the United States, and making calls and sending

emails to U.S. clients.  The majority of the marketing, selling, and distributing takes place out of

Plaintiff's Chicago facility.

11.     Plaintiff made the first use of the MEDICILON trade name in connection with its

incorporation in or about August 2003.

12.     Since 2003, Plaintiff Medicilon has expended significant time, energy, and money

promoting and marketing its business under the MEDICILON trade name.  Plaintiff has

continuously used the distinctive trade name MEDICILON in connection with Plaintiff's

services throughout both the United States and China.  Accordingly, Plaintiff appoints exclusive

sales representatives to use its trade name in connection with marketing and selling Plaintiff

Medicilon's products, and Plaintiff's products, marketing materials, informational packets, and

order forms, which are all distributed across the United States and China, prominently feature its

trade name MEDICILON.  Furthermore, in keeping with Plaintiff's unified and identifiable

branding strategy, Plaintiff displays the trade name MEDICILON on all of Plaintiff's trade show

materials, including Plaintiff's trade show booths, displays, and pamphlets and fliers.

13.     On information and belief, Plaintiff spends approximately $100,000 each year

marketing under the MEDICILON trade name.

14.     Currently, Plaintiff operates websites at the following domain names:

medicioninc.com, medicilon-mpi.com, and at its China-based site, medicilon.com.cn.  These

websites all prominently feature the MEDICILON trademark.  Plaintiff's websites offer, among

other things, online access to details about Plaintiff's business, products, and locations.

15.     As a result of this continuous and substantial marketing and sale of products, the

MEDICILON trade name has become well known to hundreds of biologic reagent customers

throughout both the United States and China, and has acquired secondary meaning and substantial, valuable goodwill, such that customers associate the MEDICILON trade name with Plaintiff Medicilon Inc.

16.     Plaintiff Medicilon owns a 30% interest in a Chinese corporation, Shanghai Medicilon.  Shanghai Medicilon develops and manufactures in bulk the biologic reagents marketed, sold, and distributed by Plaintiff.  Once Shanghai Medicilon has completed the development and manufacture of the biologic reagent, it ships the finished product to Plaintiff Medicilon for use in Plaintiff's business.

17.     The biologic reagents marketed, sold, and distributed by Plaintiff Medicilon are gross media which are marketed to and used by other companies and entities to help develop or design candidates for new drugs.  A biologic reagent known as M9 is one of the principal products marketed, sold, and distributed by Plaintiff.

**Defendant's Wrongful Formation of a New Company to Compete with Plaintiff Medicilon**

18.     On information and belief, in or around May 2008, Defendant decided to start his own company to conduct the very same business and activities performed by Plaintiff Medicilon (the "new company").

19.     In an effort to develop his own business, Defendant sought to recruit Shanghai Medicilon employees for his new company.  On information and belief, Defendant caused to be sent to Shanghai Medicilon employees a letter informing them of and recruiting them to Defendant's new company.  Defendant did not send this letter himself, nor did Defendant's name appear anywhere on the letter, because Defendant has consistently attempted to hide his association with the new company.

20.     Defendant successfully recruited approximately fourteen Shanghai Medicilon employees for the new company.

- 4 -

21.     On information and belief, Defendant directed the employees he recruited to procure property belonging to Shanghai Medicilon when they left employment with that company.  As a result, those employees removed from Shanghai Medicilon, and Defendant acquired, test tubes containing biologic reagents, cell lines, and other products developed or being developed by Shanghai Medicilon, including the biologic reagent M9.  Because this product ended up in the hands of Defendant and/or his new company, for Defendant's benefit, Plaintiff Medicilon lost the opportunity to market, sell, and distribute such product.

22.     In June 2008, Defendant resigned as director and Vice President of Plaintiff Medicilon and formally began his new company in Hong Kong.

23.     On information and belief, the new company is known as Viva Biotech.

24.     On information and belief, in order to distance himself from the new company, Defendant formed the new company under the name of his sister and/or brother.

25.     On information and belief, Defendant's new company has a facility located at 2201 W. Campbell Park Drive, Suite 8, Chicago, Illinois 60612-4160.

26.     On information and belief, Defendant's new company has been able to perform the exact same business as does Plaintiff Medicilon because, inter alia, of Defendant's wrongful acquisition of M9 and other products developed by Shanghai Medicilon for use by Plaintiff Medicilon's business.  In addition to wrongfully acquiring this property, Defendant has breached his duties to the other shareholders of Medicilon Inc., and has intentionally interfered with the customers and business of Medicilon Inc.

**Defendant's Wrongful Conduct Against Plaintiff Medicilon**

**A.    Plaintiff Medicilon's Domain Name, Telephone, and Fax Numbers**

27.    Soon after the 2003 incorporation of Medicilon Inc., Defendant was authorized to act on behalf of Plaintiff Medicilon to use its trade name MEDICILON and register the domain name medicilon.com.

28.    Defendant also was authorized to use Plaintiff's trade name MEDICILON to set up a website and an email account system for use by Plaintiff.

29.    Persons wishing to contact Plaintiff Medicilon via email, either to seek more information about the company or to place orders for products, could send an email to "info@medicilon.com" or "sales@medicilon.com," respectively.  Defendant has always been the only person with access to emails sent to "info@medicilon.com" and "sales@medicilon.com."

30.    Plaintiff Medicilon relied on its medicilon.com domain name registration, website, and email account system to attract and communicate with customers and potential customers.  Most importantly, Plaintiff's primary means of receiving customer orders was, and continues to be, by email.

31.    When he registered the medicilon.com domain name and set up the medicilon.com website and email account system, Defendant reserved sole access for himself. The other directors and shareholders of Plaintiff Medicilon, including Dr. Chen and Dr. Zhang, could not access Plaintiff's medicilon.com domain name registration, website, or email account system (aside from those emails sent directly to the personal medicilon.com accounts of Dr. Chen and Dr. Zhang).

32.    Defendant currently continues to enjoy sole access to the medicilon.com domain name registration, website, and email account system, even though he is no longer an officer or director of, nor is employed by, Plaintiff Medicilon.  Accordingly, Defendant continues to

- 6 -

operate a website, which holds itself out as the website for Medicilon Inc., at the medicilon.com

domain name. This website contains information about the business, location, and contact

information of Plaintiff Medicilon Inc. and recruits prospective customers. The website also

contains an easy-to-use order form, which customers can use to order products. Due to the

prominent display of the MEDICILON trade name, customers that use the medicilon.com

website think they are contacting and ordering products from Plaintiff Medicilon, even though

they are not.

33. Also due to his wrongful use of the www.medicilon.com domain name,

Defendant is the sole recipient of all emails addressed to "info@medicilon.com" or

"sales@medicilon.com" that Plaintiff's customers intend to send to Plaintiff. By virtue of his

sole access to these email accounts, Defendant, and not Plaintiff, is able to review email orders

addressed to Plaintiff Medicilon by its customers.

34. On behalf of Plaintiff Medicilon, Dr. Chen and Dr. Zhang have demanded both

that Defendant give them access to the medicilon.com domain name and corresponding emails

and that Defendant cease his own use of the domain name and related emails. Defendant has

refused to comply with these demands. He continues to maintain sole access to the domain name

and make use of emails sent to Plaintiff requesting information or products from Plaintiff

Medicilon. Defendant will only forward an email to Dr. Chen or Dr. Zhang once Defendant has

reviewed the email and determined that he has no use for it or the business offered within.

35. Because Plaintiff's original medicilon.com website and email system can solely

be accessed by Defendant, Defendant has been able to siphon off the business and customers that

rightfully belong to Plaintiff. Plaintiff's use of other domain names cannot reverse customer

confusion and other injuries caused by Defendant's wrongful use of the medicilon.com domain name registration, website, and email system.

36.     When Defendant was still a director and officer of Plaintiff Medicilon, he also acquired a telephone number and fax number for Plaintiff's business on its behalf.  On information and belief, these numbers include an (800) telephone number that was particularly instrumental to Plaintiff's ability to communicate with and take orders from Plaintiff's customers.

37.     As Defendant orchestrated it, he was the only director or employee of Plaintiff Medicilon with access to the passcode for these numbers, including the critical (800) telephone number for receiving orders and other communications from customers.  Because of his sole access to Plaintiff's numbers, Defendant has taken and continues to take for himself the customer business and relationships that rightfully belong to Plaintiff, despite his resignation from Plaintiff Medicilon in June 2008.

38.     On behalf of Plaintiff Medicilon, Dr. Chen and Dr. Zhang have demanded that Defendant give them access to all telephone and fax numbers and passcodes relating to Plaintiff Medicilon and that Defendant cease his own use of these numbers and passcodes.  Defendant has refused to comply with these demands.  Instead, he obstinately continues to maintain sole access to these telephone and fax numbers and passcodes.

39.     On information and belief, by and through these telephone, fax, and email orders, Defendant uses his own new company, and the technology and products wrongfully obtained from Plaintiff, to fill Plaintiff's customers' orders that come in through the medicilon.com website and email system, or by telephone or fax.  In doing so, Defendant has wrongfully usurped Plaintiff's business sales and customers for his own.

- 8 -

40. On information and belief, the customers send payment to Defendant, rather than Plaintiff, upon completion of their orders.

41. On information and belief, Plaintiff Medicilon has lost over $500,000 in revenue due to Defendant's wrongful conduct in intercepting telephone calls, faxes, and emails directed to and intended for Plaintiff Medicilon and then routing the business that the clients intended to offer to Plaintiff Medicilon to Defendant and/or his new company instead.

**B. Customer List and Relationships**

42. Because Plaintiff's communication with customers is almost exclusively via telephone, fax, and email, only those persons with access to Plaintiff's telephone, fax, and email orders can identify information about Plaintiff's actual or potential customers, including without limitation the identity of, contact information, and specific needs and orders for these customers.

43. On information and belief, Plaintiff has never published or otherwise shared, either publicly or among Plaintiff's employees, information about its actual or potential customers, including without limitation customer identity, contact information, and specific orders and needs. The list of identities and contact information for Plaintiff's actual and/or potential customers ("customer list") is therefore secret.

44. Plaintiff derives economic value from the fact that the customer list is secret and that Plaintiff alone has access to it. In fact, Plaintiff's business relies on the customer list to continue to build relationships with its customers and acquire future orders for Plaintiff's products because, on information and belief, Plaintiff's customers frequently seek more of Plaintiff's business and continue ordering Plaintiff's products. A vast percentage of Plaintiff's actual customer base reflects many customers whom Plaintiff has served since its incorporation in 2003 and who have continued to seek products from Plaintiff.

CHI-1700211v8

45.     Additionally, due to its history of maintaining relationships with its current actual customers, Plaintiff reasonably expects to continue having a business relationship with these customers.

46.     Because Defendant has access to Plaintiff's telephone, fax, and email orders, Defendant has misappropriated confidential information about Plaintiff's actual or potential customers. As he has received and continues to receive orders from customers intending to contact Plaintiff Medicilon, Defendant has been able to amass the most up-to-date list of current customers, including all new customers since June 2008, who seek Plaintiff's business. On information and belief, Defendant has collected these names from telephone, fax, and email orders directed to Plaintiff and has thereby compiled a list of Plaintiff's 2008 customers.

47.     As a former director and officer of Plaintiff, Defendant is aware of Plaintiff's history of maintaining relationships with current actual customers and Plaintiff's expectancy to continue doing so.

48.     Despite several demands on Plaintiff's behalf by Dr. Chen and Dr. Zhang, Defendant has wrongfully refused to return this customer list or any other information relating to Plaintiff Medicilon's actual or potential customers to Plaintiff Medicilon.

### C.     JPMorgan Chase Bank Account

49.     Prior to his resignation as an employee and officer of Plaintiff Medicilon, Defendant opened an authorized bank account with JPMorgan Chase Bank on behalf of Plaintiff. Defendant opened the bank account in his own name, using his own home address and, therefore, Defendant has always had sole access to this account.

50.     During his tenure with Plaintiff Medicilon, when he received payment for a sale of Plaintiff's product, Defendant was responsible for depositing all funds earned on the sale into the company's JPMorgan Chase Bank account.

51.    Until 2008, Defendant allowed the company accountant, Ellen Cai, access to all statements relating to the JPMorgan Chase account, as well as all product invoices and other sales documents he possessed relating to product sales.  Ms. Cai used these statements, invoices, and other documents to complete year-end financial statements and tax filings.

52.    In 2008, however, Defendant refused to show Ms. Cai any records, statements, or other documents relating to the JPMorgan account, product invoices, or other sales or accounting information.  Instead, in response to requests for Plaintiff's 2008 accounting documents, Defendant, through his wife, produced a substandard, and likely falsified, spreadsheet to Ms. Cai.  Defendant refused to allow Ms. Cai to see the original documents from which the spreadsheet was supposedly created.

53.    According to the spreadsheet, the balance on the JPMorgan Chase bank account was approximately $219.09 at the end of 2008.  No one other than the Defendant has access to this account.  Plaintiff Medicilon thus has no way of knowing whether this is an accurate reflection of the current state of the account.  If it is, on information and belief, then Defendant has wrongfully removed, or failed to deposit, funds belonging to Plaintiff from this account for Defendant's personal use.

54.    The JPMorgan Chase bank account is now frozen and has been since approximately June 2008.  Despite entreaties from Mr. Chen (Plaintiff's CEO) the Defendant has wrongfully, and in violation of his duties to the other shareholders, refused to give Plaintiff or any of its directors, officers, employees, or other shareholders access to the bank records or the bank account.

### D.    Other Medicilon Inc. Property in Defendant's Possession or Control

55.    In or around February 2008, Defendant used approximately $75,000 belonging to Plaintiff Medicilon to purchase an x-ray diffractmeter on behalf of Plaintiff.  On information and

belief, Defendant purchased the x-ray diffractmeter through GoIndustry Dovebid, an international corporation specializing in the sale and valuation of used industrial machinery and equipment, which at the time of purchase was in the possession of Proctor & Gamble.

56.     Although the x-ray diffractmeter was purchased on behalf of Plaintiff Medicilon and paid for by Plaintiff Medicilon, Plaintiff Medicilon never received the diffractmeter.

57.     On information and belief, Defendant ordered that the machine be transported in pieces from its original location to other locations; he had the most expensive parts of the machine sent to him, and other parts sent to both Northwestern Memorial Hospital and Rayonix, L.L.C., in Evanston, Illinois, for repairs.

58.     On information and belief, Defendant can easily supplement the components Defendant had shipped to him – by purchasing the other, less expensive components – and can thus take over and use the machine for his own benefit without having to pay for the more expensive parts.  Defendant used Plaintiff's funds to purchase the expensive components, which he had delivered to his Illinois home.

59.     The other components of the x-ray diffractmeter that are located at Northwestern Memorial Hospital and Rayonix, L.L.C. are in need of repair.

60.     On information and belief, Defendant's actions in using Plaintiff's money to buy the machine and then directing that the most expensive components of the machine be shipped to his home, occurred contemporaneously with Defendant's initiation of the new company.

### E.     Other Medicilon Inc. Records in Defendant's Possession or Control

61.     After his resignation as director and Vice President of Plaintiff Medicilon, Defendant kept all documents, books and records, and other information pertaining to the incorporation of Plaintiff Medicilon and all other company documents in his possession relating to Plaintiff.

- 12 -

62.     Dr. Chen, as a director, officer, and shareholder of Plaintiff Medicilon, has made several written requests to Defendant, on Plaintiff's behalf, demanding that Defendant return the company's books and records.

63.     Defendant has consistently refused to return any of the foregoing documents to Plaintiff.  As a result, Plaintiff has little if any access to information necessary to run Plaintiff's business.

**Plaintiff's Attempts To Negotiate with Defendant and Otherwise Stop Defendant's Wrongful Behavior**

64.     From June 2008 to the present, Dr. Chen and Dr. Zhang have made several attempts to halt Defendant's harmful conduct and recover Plaintiff's property, including the MEDICILON trade name and medicilon.com domain name registration, website, and email account system.

65.     On numerous occasions, Dr. Chen has attempted to negotiate with Defendant and convince Defendant to return and cease using Plaintiff's assets and other property.

66.     When Dr. Chen's initial attempts to negotiate and reason with Defendant failed, in or around October of 2008, Dr. Chen and Dr. Zhang sought legal counsel in Shanghai on Plaintiff's behalf regarding the interference with Shanghai Medicilon's employees.

67.     Plaintiff made further attempts to recoup its property in this country and on or about March 23, 2009, counsel for Plaintiff Medicilon sent Defendant a letter, demanding the return of the property belonging to Plaintiff Medicilon.

68.     Defendant replied by refusing to return any of Plaintiff's property, books, records, or other documents and asserted that Plaintiff Medicilon did not have the right to the medicilon.com domain name registration, website, and email account system.

69.     On or about April 8, 2009, counsel for Plaintiff sent another letter to Defendant, demanding that Defendant return the x-ray diffractmeter and all other property held by Defendant, including the domain name registration.

70.     On May 20, 2009, counsel for Plaintiff sent a final demand letter to Defendant, by email, asking that Defendant return all documents and other information relating to Plaintiff, by Friday, May 22, 2009.  Plaintiff's counsel also sent a copy of this letter to Defendant's home by FedEx.  Defendant refused to accept FedEx delivery of the letter and further failed to comply with this demand.

71.     By his continued refusal to comply with Plaintiff's demands, Defendant has breached his duties to the other shareholders of Plaintiff Medicilon, breached his duty as an officer and director of the company during his employment with Plaintiff, and caused damages to Plaintiff by his intentional and willful conduct.

72.     Defendant damaged Plaintiff in the loss of funds in the JPMorgan Chase bank account; the use of Plaintiff's trade name, including its domain name, email account system, and business numbers; loss of past, current, and future business; loss of Plaintiff's customer information and contacts, and loss of other corporate property, including among other items, the entire x-ray diffractmeter.

## COUNT I

## UNFAIR COMPETITION UNDER THE LANHAM ACT

73.     Plaintiff Medicilon reasserts and incorporates by reference paragraphs 1-72 as if fully set forth in this paragraph.

74.     Plaintiff Medicilon owns the trade name MEDICILON in various formats and designs.

CHI-1700211v8

75. The MEDICILON trade name is distinctive and entitled to protection under Section 43 of the Lanham Act and 15 U.S.C. § 1125.

76. Defendant has marketed, displayed, advertised, and sold products in interstate commerce under an identical mark, including by using the domain name medicilon.com.

77. Defendant's actions are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Medicilon Inc., and have damaged and are further likely to damage the reputation and goodwill previously established by Plaintiff Medicilon in its trade name.

78. The foregoing acts of Defendant constitute willful infringement of Plaintiff Medicilon's trade name in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT II

## CYBERSQUATTING

79. Plaintiff Medicilon reasserts and incorporates by reference paragraphs 1-72 as though fully set forth in this paragraph.

80. Plaintiff Medicilon owns the trade name MEDICILON.

81. The MEDICILON trade name is distinctive and entitled to protection under Section 43 of the Lanham Act and 15 U.S.C. § 1125.

82. Defendant, with a bad faith intent to profit from Plaintiff Medicilon's trade name, MEDICILON, has used the medicilon.com domain name.

83. The medicilon.com domain name is identical to Medicilon's trade name.

84. The foregoing acts of Defendant constitute "cybersquatting" as that term is commonly used, in violation of 15 U.S.C. § 1125(d).

85. Defendant's activities have caused, and will continue to cause, Plaintiff Medicilon to suffer injury and damages.

CHI-1700211v8

## COUNT III

## UNFAIR BUSINESS PRACTICES UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

86.     Plaintiff Medicilon reasserts and incorporates paragraphs 1-72 as if fully set forth in this paragraph.

87.     Defendant's knowing and intentional use of the domain name medicilon.com and the MEDICILON trade name constitutes an unfair method of competition, a deceptive trade practice, and a misrepresentation of the source, origin, affiliation, or sponsorship of these trade names under the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2.

88.     Defendant's acts are fraudulent and are calculated to cause reliance, deception, and confusion.

89.     Defendant's acts occurred in the course of trade and commerce.

90.     Defendant's acts have caused and will continue to cause irreparable injury to the public and Plaintiff Medicilon's goodwill and business reputation.

## COUNT IV

## UNFAIR BUSINESS PRACTICES UNDER UNIFORM DECEPTIVE TRADE PRACTICES ACT

91.     Plaintiff Medicilon reasserts and incorporates paragraphs 1-72 as if fully set forth in this paragraph.

92.     Defendant's activities in the course of business and set forth above have caused and will continue to cause a likelihood of confusion or misunderstanding as to the sponsorship, approval, status, affiliation, or connection of Defendant with Plaintiff Medicilon and have caused and will continue to cause a likelihood of confusion or misunderstanding as to the affiliation, connection, or association of Defendant with Plaintiff Medicilon.

CHI-1700211v8

93.     Defendant's activities have given rise and will continue to give rise to the incorrect belief that Defendant has some connection with Plaintiff Medicilon, irreparably damaging Plaintiff's goodwill and reputation, in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2.

94.     Defendant will continue to engage in deceptive acts causing this irreparable damage to Plaintiff, unless such activities are enjoined by this Court.

## COUNT V

## CONVERSION

95.     Plaintiff Medicilon reasserts and incorporates paragraphs 1-72 as if fully set forth in this paragraph.

96.     Plaintiff Medicilon has the right to all of Plaintiff's corporate property, including without limitation the following:  the company books and records from 2004 to the present; books, records, and other documents relating to the incorporation of Plaintiff Medicilon; books, records, and other documents relating to Plaintiff's account at JPMorgan Chase Bank; Plaintiff's client lists; Plaintiff's domain name registration, website, and email account system; Plaintiff's emails; Plaintiff's telephone and fax numbers; and other corporate property, such as the complete x-ray diffractmeter.

97.     Plaintiff has an absolute and unconditional right to the immediate possession of the corporate property set forth above.

98.     Plaintiff has made demands for possession of the corporate property set forth above.

99.     Defendant wrongfully and without authorization assumed (and continues to assume) control, dominion, and/or ownership over the corporate property set forth above.

100.    As of the date of this Complaint, the corporate property set forth above has not been returned to Plaintiff.

101.    As such, Defendant is liable to Plaintiff for conversion of the corporate property set forth above.

102.    In addition, Plaintiff is entitled to reasonable compensation for the wrongful withholding of the corporate property set forth above.

**COUNT VI**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

103.    Plaintiff Medicilon reasserts and incorporates paragraphs 1-72 as if fully stated in this paragraph.

104.    Plaintiff Medicilon had a reasonable expectation of entering into and continuing its valid business relationships with customers with whom Plaintiff had a history of serving and customers who attempted to contact Plaintiff to continue their business relationships with Plaintiff.

105.    Defendant knew Plaintiff expected to continue Plaintiff's valid business relationships with Plaintiff's customers.

106.    Defendant purposefully and unjustifiably interfered with Plaintiff's expectancy to continue relationships with Plaintiff's customers and thereby prevented Plaintiff's legitimate expectancy from ripening into valid business relationships.

107.    Plaintiff's business has been severely damaged due to the loss of its legitimate business expectancy.

CHI-1700211v8

## COUNT VII

### BREACH OF DUTY OF LOYALTY

108.     Plaintiff Medicilon reasserts and incorporates paragraphs 1-72 as if fully stated in this paragraph.

109.     Defendant owes the fiduciary duty of loyalty to Plaintiff Medicilon due to Defendant's position as a former director and officer of Plaintiff Medicilon.

110.     Defendant continues to owe a fiduciary duty of loyalty to Plaintiff as a current shareholder of Plaintiff Medicilon, a closely held corporation.

111.     While an officer and director of Plaintiff Medicilon, Defendant had access to corporate property, including without limitation the following:  the company books and records from 2004 to the present; books, records, and other documents relating to the incorporation of Plaintiff Medicilon; books, records, and other documents relating to Plaintiff's account at JPMorgan Chase Bank; Plaintiff's client lists; Plaintiff's domain name registration, website, and email account system; Plaintiff's emails; Plaintiff's telephone and fax numbers; and other corporate property, such as the complete x-ray diffractmeter.

112.     Defendant used his position as officer and director of Plaintiff to access and maintain the above-noted corporate property and now currently refuses to return this property belonging to Plaintiff Medicilon.

113.     Furthermore, because he had access to this property while a director and officer of Plaintiff Medicilon, prior to his resignation, Defendant used this property, and information within, to set up his new company, wrongfully recruit employees, and acquire information relating to Plaintiff's products that would enable his new company to compete with Plaintiff. Additionally, Defendant's actions and access that he enjoyed as a director and officer of Plaintiff enabled Defendant to usurp Plaintiff's customers.

- 19 -

114.    Defendant continues to take advantage of Plaintiff's business by using Plaintiff's products, domain name, website, business numbers and customers in his own business.

115.    By the aforementioned acts, Defendant receives personal benefits from Plaintiff.

116.    Defendant did not and does not receive these personal benefits from a fair transaction.

117.    Defendant is in breach of his duty of loyalty to Plaintiff by not returning this property to Plaintiff and by using the property to compete with Plaintiff and usurp Plaintiff's customer opportunities.

118.    Plaintiff suffers damages due to Defendant's conduct because Plaintiff is unable to conduct its business without the property and customers wrongfully taken by Defendant. Plaintiff estimates it has lost at least $500,000 in 2008 business due to Defendant's conduct.

119.    As such, Defendant is liable to Plaintiff for breach of duty of loyalty.

## COUNT VIII

### BREACH OF DUTY OF CARE

120.    Plaintiff Medicilon reasserts and incorporates paragraphs 1-72 as if fully stated in this paragraph.

121.    Defendant owes the fiduciary duty of care to Plaintiff Medicilon due to Defendant's position as a former director and officer of Plaintiff Medicilon.

122.    Defendant continues to owe a fiduciary duty of loyalty to Plaintiff as a current shareholder of Plaintiff Medicilon, a closely held corporation.

123.    Prior to his resignation, Defendant breached his duty of care to Plaintiff by prohibiting the other officers and directors from accessing Plaintiff's domain name and telephone, fax, and email systems and guaranteeing that Defendant only had access to and communication with Plaintiff's customers.  Defendant also breached his duty of care as an

officer and director of Plaintiff by failing to keep records and control of property he purchased on Plaintiff's behalf with Plaintiff's assets.

124.     By refusing to return Plaintiff's property, and by continuing to take advantage of Plaintiff's business by using Plaintiff's products, domain name, and customers in his own business, Defendant continues to fail to show adequate care owed by a shareholder.

125.     Plaintiff is damaged by Defendant's conduct because Plaintiff no longer has access to its medicilon.com domain name and telephone, fax, and email systems, as well as Plaintiff's records and other property in Defendant's possession.  Because Plaintiff has lost such access, Plaintiff can no longer contact its customers.  Plaintiff estimates it has lost $500,000 in 2008 business due to its loss of customers.  Plaintiff further continues to be unable to adequately conduct its own business due to Defendant's deprivation of Plaintiff's property.

126.     As such, Defendant is liable to Plaintiff for breach of duty of care.

<u>**COUNT IX**</u>

**TRADE SECRET MISAPPROPRIATION**

127.     Plaintiff Medicilon reasserts and incorporates paragraphs 1-72 as if fully stated in this paragraph.

128.     Plaintiff's customer list is the property of Plaintiff Medicilon.

129.     Without Plaintiff's consent, Defendant has misappropriated and converted the confidential and  trade secret information therein, and his new company has used the misappropriated information.

130.     Despite repeated demands, Defendant has failed to return any and all copies of the customer list, as well as communications containing confidential and trade secret customer information.

- 21 -

131.     As a direct and proximate result of Defendant's misappropriation of Plaintiff's trade secrets, Plaintiff has been and continues to be damaged and irreparably injured in its business and property.  Plaintiff will continue to be damaged and irreparably injured unless Defendant is restrained and enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Medicilon prays for the following relief:

(a)     That the Court order Defendant to return to Plaintiff the property belonging to Plaintiff Medicilon.

(b)     That the Court permanently enjoin Defendant, and all persons in active concert or participation with Defendant, from:

(i)     making any use of Plaintiff's trade name MEDICILON, including the domain name medicilon.com, pursuant to 15 U.S.C. § 1116.

(ii)     making any use of Plaintiff's trade name MEDICILON in any manner likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or otherwise pursuant to 15 U.S.C. § 1116.

(iii)     causing deception, fraud, false pretense, misrepresentation, confusion, or mistake, by using the MEDICILON trade name and medicilon.com domain name without Plaintiff Medicilon's consent, or otherwise damaging Plaintiff by deceptive trade practices, pursuant to 815 ILCS 510/3.

(iv)     misappropriating Plaintiff's customer list, pursuant to 765 ILCS 1065/3.

(c)     That the Court enter an order transferring the medicilon.com domain name registration from Defendant to Plaintiff, pursuant to 15 U.S.C. § 1125(d)(1)(C).

CHI-1700211v8

(d)     That the Court order Defendant, pursuant to 15 U.S.C. § 1116, to file with the Court and serve upon Plaintiff within thirty (30) days of this Court's Order, a report setting forth the manner and form in which Defendant complied with the injunction.

(e)     An award of profits, damages, costs, and attorneys' fees to Plaintiff for Defendant's wrongful conduct set forth in this Complaint including without limitation the following:

(i)     an award of profits, damages, costs, and attorneys' fees to Plaintiff for Defendant's willful infringement of Plaintiff's MEDICILON trade name, pursuant to 15 U.S.C. § 1051, et seq., 815 ILCS 505/10a, and 815 ILCS § 510/3.

(ii)     an award of Defendant's profits, pursuant to 15 U.S.C. § 1117.

(iii)     an award of Plaintiff's actual loss caused by Defendant's misappropriation and Defendant's unjust enrichment caused by Defendant's misappropriation, pursuant to 765 ILCS 1065/4.

(f)     That the Court award Plaintiff punitive damages for the willful and vexatious improper conduct of Defendant, including without limitation Defendant's willful and malicious misappropriation under 765 ILCS 1065/4.

(g)     That the Court award Plaintiff any such other and further relief as the Court may deem proper, in the form of declarations or otherwise, including such equitable relief as the Court may deem appropriate.

CHI-1700211v8

Dated:  June 29, 2009

MEDICILON INC.

By:     s/ Kelly M. Marino
        One of its attorneys

June K. Ghezzi (IL Bar #6185506)
Kelly M. Marino (IL Bar #6293296)
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
jkghezzi@jonesday.com
kmarino@jonesday.com
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585